## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

COLORADO TAX SPECIALISTS CO.,     )
            )
        Plaintiff,       )
            )
       v.            )     Case No. 4:25-cv-00047-RK
            )
H&R BLOCK TAX SERVICES, LLC,     )
            )
        Defendant.     )

## ORDER

Before the Court is Defendant H&R Block Tax Services, LLC's motion for summary judgment on Colorado Tax Specialist Co.'s complaint.[1] (Doc. 60.) This motion is fully briefed. (Docs. 61, 62, 65.) After careful consideration and for the reasons explained below, the Court **ORDERS** that H&R Block's motion for summary judgment is **GRANTED**.[2]

## Background[3]

Colorado Tax and H&R Block entered into two Franchise License Agreements ("FLAs") which provided Colorado Tax the right to operate H&R Block franchised businesses in particular locations. The first FLA was executed on December 19, 2019, and permitted Colorado Tax to operate an H&R Block franchised business in Walsenburg, Colorado;[4] Trinidad, Colorado; and Raton, New Mexico. The second FLA was executed on October 8, 2020, and permitted Colorado Tax to operate an H&R Block franchised business in Albuquerque, New Mexico. Both FLAs contain a "Small Business Addendum" allowing Colorado Tax to offer (in addition to traditional

---

[1] The Court previously dismissed Count 3 of the complaint. (Doc. 40.)

[2] Also pending in this case are H&R Block's counterclaims against Colorado Tax and third-party claims against Stephanie Theil, who is the "principal" of Colorado Tax. Neither party submitted a motion for summary judgment pertaining to these claims; thus, they remain pending in this case.

[3] Except where otherwise noted, these facts are taken from the parties' statements of uncontroverted facts. The Court has omitted facts properly controverted, facts asserted that are immaterial to the resolution of the pending motion, facts asserted that are not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact.

[4] The Walsenburg, Colorado, location was previously closed by Colorado Tax and is not relevant to this lawsuit.

tax services) "bookkeeping, payroll, non-attest and non-audit general accounting services" and other business services pursuant to terms and conditions set forth by H&R Block.

The FLAs govern the relationship and obligations between Colorado Tax as franchisee and H&R Block as franchisor. Most relevant here, the FLAs govern limitations on competition and disclosure of H&R Block information, and they provide circumstances under which each party may terminate the FLAs and the procedure for doing so.

Section 12 of the FLAs governs "Limitations on Competition and Disclosure." (Doc. 61-1 at 20; Doc. 61-2 at 20.) Section 12.1 pertains to Confidential Information and states:

> (A) Except as expressly provided herein, *Franchisee will have no right, title, or interest in Confidential Information.* Franchisee will communicate, disclose, and use Confidential Information only as expressly permitted in this Agreement or as required by law. Franchisee will disclose Confidential Information only to those of Franchisee's Associates, employees, agents, or independent contractors who must have access to it in connection with their work on behalf of the Franchised Business. This covenant will survive the expiration, termination, or Transfer of this Agreement or any interest in this Agreement and will be perpetually binding upon Franchisee.
>
> (B) *Franchisee will cause Franchisee's Associates, employees, agents, and independent contractors having access to Confidential Information to sign confidentiality agreements substantially in the form that H&R Block prescribes*, stating that they will preserve all Confidential Information in confidence. Neither Franchisee, nor Franchisee's Associates, employees, agents, or independent contractors will at any time, *without H&R Block's prior written consent,* copy, duplicate, record, or otherwise reproduce Confidential Information, in whole or in part, *nor otherwise make Confidential Information available to any unauthorized person.* Franchisee will be responsible and liable for any misuse of Confidential Information by others whom Franchisee has either allowed to improperly access Confidential Information or from whom Franchisee failed to obtain a signed confidentiality agreement as required by this Section 12.1(B).

(Doc. 61-1 at 20; Doc. 61-2 at 20 (emphases added).) "Confidential Information" is defined in the FLAs as:

> the components of the H&R Block System, the information comprising the Manual, and *all Client Data*, directives, know-how, techniques, materials, data, and other information imparted or made available by H&R Block to Franchisee or otherwise learned or acquired by Franchisee in the course of operating the Franchised Business that is (1) designated as confidential, (2) known by Franchisee to be considered confidential by H&R Block or its affiliates, or (3) by its nature inherently or reasonably could be considered confidential.

(Doc. 61-1 at 4; Doc. 61-2 at 4 (emphasis added).) "'**Client Data**' means any and all information obtained from or relating to clients of the Franchised Business or any other Network Office." (Doc. 61-1 at 4; Doc. 61-2 at 4.)

Section 12.2 of the FLAs sets forth "Restrictions on Competition" and states that "[d]uring the term of this Agreement, neither Franchisee nor any of Franchisee's Associates will, without H&R Block's prior written consent:"

> (1) Directly or indirectly own, maintain, engage in, have any interest in (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) or provide any assistance to any business that offers products or services that are the same as or similar to any Authorized Service (a) in or within 45 miles of the Franchise Territory, or (b) within 45 miles of any Network Office;

> (2) Divert or attempt to divert the business of any Network Office (including the Franchised Business) to any competitor; or

> (3) Do any act injurious or prejudicial to the goodwill of the H&R BLOCK Brand.

(Doc. 61-1 at 21; Doc. 61-2 at 21.)

Section 13 sets forth the circumstances under which H&R Block may terminate the FLA "immediately upon the giving of written notice to Franchisee, without affording Franchisee an opportunity to cure its default." Section 13 permits H&R Block to immediately terminate the FLA on the occurrence of the following relevant events:

> (M) Competition, disclosure, or other conduct by Franchisee or any of Franchisee's Associates that violates Section 12 of this Agreement;

> (N) H&R Block gives Franchisee notice, at one time or cumulatively, of more than 3 defaults under this Agreement and any other H&R Block franchise agreement entered into by Franchisee, its Principal, or any of Franchisee's affiliates during any 12-month period, regardless of whether the defaults have been cured by Franchisee[.]"

(Doc. 61-1 at 24; Doc. 61-2 at 23-24.)

On October 29, 2024, H&R Block terminated Colorado Tax's FLAs by sending a letter to John Holland, who is counsel for Colorado Tax and its principal Stephanie Theil. (Doc. 61-5.) The letter provided three reasons for H&R Block's immediate termination of the FLAs. First, the letter states that Colorado Tax violated Section 12.2(A), which prohibits specified competition, by "transitioning the Franchised Business' bookkeeping services to third-party competitor Synergy Tax Solutions LLC" ("Synergy"). (Doc. 61-5 at 3.) Second, it states that Colorado Tax violated Section 12.1, pertaining to the use and disclosure of Confidential Information, by sharing Confidential Information with Synergy and its employees without obtaining H&R Block's written

3

consent. (*Id.*) H&R Block noted that violations of Section 12 provide immediate grounds for termination under Section 13(M). Third, and finally, the letter states that "Franchisee has had more than 3 defaults under the FLAs within a 12-month period." (*Id.*)

The parties contest the nature of Colorado Tax's relationship with Synergy. H&R Block contends that Synergy is a third-party competitor to H&R Block and its franchised businesses, while Colorado Tax contends that Synergy was a subcontractor it engaged to help Colorado Tax perform its bookkeeping services at a lower cost.[5] Regardless, the following facts concerning Colorado Tax's relationship with Synergy are uncontroverted: Colorado Tax was in communication with various Synergy employees, including Ryan McGarghan, Guillermo Vallejo, and Kevin Cubillo, regarding the bookkeeping aspects of Colorado Tax's H&R Block franchised businesses. Synergy performed bookkeeping services for at least five to seven clients associated with Colorado Tax's H&R Block franchises. Colorado Tax did not make Ryan McGarghan, Guillermo Vallejo, or Kevin Cubillo execute official confidentiality agreements. H&R Block did not give written permission to Colorado Tax to make Confidential Information available to these Synergy employees.

Despite the lack of confidentiality agreements or written consent from H&R Block, Colorado Tax shared Confidential Information with Synergy employees, including Mr. McGarghan and Mr. Vallejo. For example, Colorado Tax added Mr. McGarghan and his email, ryanmcgarghan@gmail.com,[6] to a client's QuickBooks account with accountant access without the client's permission. (Doc. 61-6 at 5.) In response to this incident, Ms. Theil—on behalf of Colorado Tax—emailed the client and explained that Colorado Tax was transitioning its bookkeeping department to Synergy and Mr. McGarghan. (*Id.* at 95.)[7] Moreover, emails between Ms. Theil and Mr. McGarghan and Ms. Theil and Mr. Vallejo show that Colorado Tax was sharing client payroll information, IRS communications to its clients, and Colorado Tax's Clients Tracker

---

[5] Ultimately, the precise nature of Colorado Tax's relationship with Synergy is immaterial to the Court's summary judgment ruling for the reasons provided herein.

[6] The record also shows that Mr. McGarghan had a Synergy email, ryan@wearesynergysolutions. com. (*See* Doc. 61-6 at 8.)

[7] Colorado Tax argues that the client complaint email is inadmissible hearsay and thus cannot support summary judgment. The Court concludes that the client email likely satisfies the business record exception to the hearsay rule. Even if the client email were hearsay, Ms. Theil's response is admissible as a party-opponent statement and is sufficient to establish the transfer to Mr. McGarghan of accountant access to the client's account (and the information located therein).

with the Synergy employees. (*Id.* at 8 (client tax liability report; client payroll allocation report; client IRS letter), 41 (client payroll register);[8] 99 (Colorado Tax Clients Tracker).)

Colorado Tax denies that it disclosed Confidential Information to a competitive business or third party or that it transferred any Confidential Information outside of the H&R Block system. Colorado Tax attempts to controvert this fact by arguing that it was in the process of onboarding Synergy employees Ryan McGarghan, Guillermo Vallejo, and Kevin Cubillo and providing them with H&R Block email addresses. Colorado Tax does not, however, properly controvert the fact (demonstrated above) that Confidential Information was actually transferred to these Synergy employees. (Doc. 62 at 10, ¶ 24.)[9] In other words, even assuming that Colorado Tax was onboarding these employees to work as subcontractors on its bookkeeping services, it is uncontroverted that the onboarding process was not complete, none of them had signed confidentiality agreements, and that Confidential Information was transferred to them.

Further facts are set forth below as necessary.[10]

## Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In this context, a fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In applying this standard, the Court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

---

[8] The Court notes that the exhibit attached to Defendant's motion for summary judgment is redacted further than the screenshot included in Defendant's motion itself. (*Compare* Doc. 61 at 13, *with* Doc. 61-6 at 39.) However, it is clear from the date (8/13/2024), time (2:01:49 PM), sender (Thiel, Stephanie), recipient (Ryan McGarghan), and subject (941 [redaction]), that Doc. 61-6 is the same email sending Ryan McGarghan a client's payroll register as appears in the screenshot in Defendant's motion.

[9] And any such attempt to deny that these employees received Confidential Information would be contrary to Colorado Tax's own additional uncontroverted fact that "Synergy performed bookkeeping services for only approximately five to seven clients associated with Colorado Tax's H&R Block franchise." (Doc. 62 at 22, ¶ 64.) Synergy could not provide services without client data, which is included in the definition of Confidential Information.

[10] Colorado Tax provided a "statement of additional material facts" in opposition to H&R Block's motion for summary judgment. Many of these facts are immaterial to the pending motion for summary judgment. Therefore, the Court does not include them all herein.

5

574, 587-88 (1986); *Recio v. Creighton Univ.*, 521 F.3d 934, 938 (8th Cir. 2008) (citation omitted). Thus, the relevant inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *see also Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) (noting mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted). Additionally, on summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial." *Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019).

## Discussion

### I.    Breach of Contract (Count 1)

Colorado Tax asserts that H&R Block materially breached the FLAs by wrongfully terminating the FLAs without cause based on retaliatory and manufactured reasons, and that H&R Block did not provide Colorado Tax with an opportunity to cure the alleged defaults. (Doc. 1 at 11, ¶ 65; Doc. 62 at 33.) Colorado Tax must establish the following four elements to prevail on a breach of contract claim under Missouri law:[11] "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Goldsmith v. Lee Enters.*, 57 F.4th 608, 612 (8th Cir. 2023) (citing *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. 2010)). H&R Block argues that Colorado Tax has failed to establish elements two and three above—that Colorado Tax performed pursuant to the FLAs and that H&R Block breached. Colorado Tax argues that summary judgment is precluded because issues of material fact remain, specifically

---

[11] The parties agree that Missouri law applies in this case.

6

whether Colorado Tax breached the FLAs (in the inverse, whether Colorado Tax performed pursuant to the contract) and whether Synergy was a subcontractor or a competitor.

### A. Element 2 – Performance

As to element 2, whether Colorado Tax performed pursuant to the FLAs, the Court finds that the uncontroverted facts show that Colorado Tax failed to perform its obligations under the FLAs. Specifically, the uncontroverted facts establish that Colorado Tax did not fulfill its obligations related to the use and disclosure of Confidential Information because Colorado Tax disclosed Confidential Information to Synergy employees without consent from H&R Block and without having the individuals sign confidentiality agreements.

"Under Missouri law, summary judgment is appropriate [in a contract case] where the language of the contract is clear and unambiguous such that the meaning of the portion of the contract in issue is so apparent that it may be determined from the four corners of the document." *Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*, 784 F.3d 1183, 1188 (8th Cir. 2015) (citations omitted). Section 12.1 of the FLAs is clear that (1) Colorado Tax was required to have its associates, agents, employees, and independent contractors who had access to Confidential Information "sign confidentiality agreements substantially in the form that H&R Block prescribes, stating that they will preserve all Confidential Information in confidence," and (2) that Colorado Tax would not without H&R Block's prior written consent "make Confidential Information available to any unauthorized person." (Doc. 61-1 at 20; Doc. 61-2 at 20.) Moreover, the FLAs define Confidential Information broadly to include Client Data, directives, know-how, techniques, materials, data, and other such information.

The uncontroverted summary judgment record establishes that Colorado Tax did not have Synergy employees sign a confidentiality agreement or obtain written consent from H&R Block to disclose Confidential Information to the Synergy employees. Colorado Tax concedes that Ryan McGarghan, Guillermo Vallejo, and Kevin Cubillo had not signed confidentiality agreements. Colorado Tax argues that it was in the process of onboarding these employees as subcontractors; however, Colorado Tax does not point to a contractual provision in the FLAs which would exempt it from the obligation to have these individuals sign confidentiality agreements, even if they were being actively onboarded.[12] In other words, Colorado Tax was required by the unambiguous terms

---

[12] Whether these individuals were being actively onboarded as subcontractors is a fact which is contested in the summary judgment record.

of the FLAs to have Mr. McGarghan, Mr. Vallejo, and Mr. Cubillo sign confidentiality agreements prior to receiving Confidential Information even if they were being actively onboarded as subcontractors. Colorado Tax has also not provided any evidence that it received prior written consent from H&R Block to share Confidential Information with these individuals.

Moreover, the record shows that Confidential Information actually was disclosed to Mr. McGarghan and Mr. Vallejo. In Colorado Tax's own statement of additional material facts, it states that Synergy performed bookkeeping services for approximately five to seven clients associated with Colorado Tax's H&R Block franchise. Such services would require Client Data to be shared with Synergy employees. The documentary evidence submitted by H&R Block also demonstrates that these individuals received Confidential Information from Colorado Tax. This includes Mr. McGarghan being added to a client's QuickBooks account with accountant access without the client's permission, (Doc. 61-6 at 5), and numerous emails between Ms. Theil on behalf of Colorado Tax and the Synergy employees with Client Data or other Confidential Information attached, (*id.* at 8 (client tax liability report; client payroll allocation report; client IRS letter), 41 (Client payroll register); 99 (Colorado Tax Clients Tracker)). Thus, the uncontroverted facts in the record establish that Colorado Tax did not perform its disclosure obligations as required by Section 12.1 of the FLAs, and Colorado Tax has failed to establish by evidence in the summary judgment record element 2 of its breach of contract claim.[13] H&R Block is entitled to summary judgment on Count 1 for this reason alone.

## B. Element 3 – Breach

In addition to failing to establish element 2 of its breach of contract claim, Colorado Tax has also failed to establish by evidence that H&R Block breached the FLAs. Colorado Tax asserts that H&R Block breached the FLAs by immediately terminating the FLAs without cause and without an opportunity to cure the alleged defaults. H&R Block provided multiple reasons for the termination of the FLAs, including violating Section 12.2(A)'s prohibition on competition,

---

[13] The Court is not persuaded by Colorado Tax's argument that there is a material fact whether Colorado Tax violated the FLAs (or, in other words, failed to perform under the FLAs), in light of the foregoing. Colorado Tax did not properly controvert the fact that it shared Confidential Information with individuals who had not signed confidentiality agreements and with whom Colorado Tax had not received written consent from H&R Block to share Confidential Information.

violating Section 12.1's Confidential Information disclosure limitations, and that Colorado Tax had more than three defaults under the FLAs within a 12-month period.

Under the express terms of the FLAs, certain occurrences and conditions provide H&R Block with an immediate right to terminate without an opportunity to cure. This includes "[c]ompetition, disclosure, or other conduct by Franchisee or any of Franchisee's Associates that violates Section 12" of the FLAs. (Doc. 61-1 at 24; Doc. 61-2 at 23-24.) As concluded above, the uncontroverted facts establish that Colorado Tax failed to perform its Confidential Information disclosure obligations under Section 12 of the FLAs by not having Synergy employees sign a confidentiality agreement and failing to get written consent from H&R Block to share Confidential Information with those individuals. Thus, H&R Block was entitled to terminate the FLAs pursuant to Section 13(M) without providing an opportunity to cure because Colorado Tax's conduct violated the disclosure provisions of Section 12.[14] *See Gordon A. Gundaker Real Estate v. Maue*, 793 S.W.2d 550, 553 (Mo. Ct. App. 1990) (interpreting termination provision of contract and concluding that the terminating party was "entitled to terminate the contract without liability" where a condition for termination was met).

Because the Court finds that H&R Block did not breach the contract as explained above, Colorado Tax has failed to establish element 3 of its breach of contract claim. H&R Block's motion for summary judgment is therefore **GRANTED** as to Count 1.

## II. Breach of Implied Covenant of Good Faith and Fair Dealing (Count 2)

In Count 2, Colorado Tax alleges that H&R Block breached the implied covenant of good faith and fair dealing by "retaliating against Plaintiff for making legitimate, critical comments about H&R Block's defective software and for wrongfully terminating the FLA's [sic] for manufactured and false reasons without advance notice." (Doc. 1 at 12, ¶ 69.)

---

[14] H&R Block also argues it was entitled to terminate the FLAs without opportunity to cure because of Colorado Tax's alleged violations of the competition provisions of Section 12 and Colorado Tax's alleged three defaults in the prior 12-month period. The Court need not reach these arguments because the disclosure violation provided sufficient cause for termination. *See Prestige Ins. Grp., LLC v. Allstate Ins. Co.*, No. 21-cv-60515, 2022 WL 18911742, at *5-6, 6 n.5 (S.D. Fla. Dec. 29, 2022) (granting defendant summary judgment on breach of contract claim based on wrongful termination of the contract where defendant showed there was no issue of material fact as to one ground upon which it terminated the agreement, despite issues of material fact remaining on other stated reasons for the contract's termination). Because Colorado Tax's violation of the disclosure provisions alone is grounds for termination of the FLAs, any outstanding issues of material fact as to the remaining grounds for termination are immaterial to the Court's decision.

9

"Missouri law implies a covenant of good faith and fair dealing in every contract." *City of Joseph v. Lake Contrary Sewer Dist.*, 251 S.W.3d 362, 369 (Mo. Ct. App. 2008) (quoting *Farmers' Elec. Coop. v. Mo. Dep't of Corr.*, 977 S.W.2d 266, 271 (Mo. banc 1998)). "Where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise the discretion in good faith and in accordance with fair dealing." *Id.* (internal quotation marks omitted; quotation modified). "The covenant of good faith and fair dealing encompasses an 'obligation imposed by law to prevent opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting.'" *Id.* (quoting *Spencer Reed Grp., Inc. v. Pickett*, 163 S.W.3d 570, 574 (Mo. Ct. App. 2005)).

Thus, Missouri law implies a covenant of good faith and fair dealing in the FLAs entered into between Colorado Tax and H&R Block. Section 13 of the FLAs provides H&R Block with discretion to terminate the FLAs upon the occurrence of certain circumstances. (*See* Doc. 61-1 at 23; 61-2 at 22 ("H&R Block *may* terminate this Agreement immediately . . . without affording Franchisee an opportunity to cure . . . on the occurrence of any of the following events . . . ." (emphasis added)). "There can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract." *City of Joseph*, 251 S.W.3d at 371 (internal quotation marks omitted; quotation modified); *see also CitiMortgage, Inc. v. Chi. Bancorp, Inc.*, 808 F.3d 747, 751 (8th Cir. 2015); *Bishop & Assocs., LLC v. Ameren Corp.*, 520 S.W.3d 463, 471 (Mo. 2017) ("[T]he implied covenant cannot be used to contradict or override the *express* employment terms contained in a contract.").

Here, H&R Block argues that the conduct at issue (its termination of Colorado Tax's FLAs without an opportunity to cure) is expressly permitted by Section 13(M) of both FLAs. The Court agrees. Colorado Tax argues that summary judgment is precluded on this claim because (1) there is a genuine dispute of material facts as to whether H&R Block had the contractual right to terminate the FLAs without notice or opportunity to cure and (2) that even if H&R Block had discretion to terminate the contract, the implied covenant is breached when that discretion is exercised in bad faith or for an improper purpose.

As to Colorado Tax's first argument—that issues of material fact remain regarding whether H&R Block was contractually entitled to terminate the FLAs—the Court finds that its analysis as

to breach of contract above is dispositive of this issue.  The uncontroverted facts establish a violation of the disclosure provisions, and thus H&R Block had the express contractual right to terminate the FLAs.

As to Colorado Tax's second argument, it argues that evidence in the record indicates that H&R Block acted in bad faith and with retaliatory motive to deprive Colorado Tax of its expected benefit of the bargain—the five or six years remaining on the terms of the FLAs.  To show bad faith, Colorado Tax must do more than show H&R Block's decision to terminate the FLAs was erroneous (which it has not done); Colorado Tax is required to show that H&R Block exercised its discretion "in such a manner as to evade the spirit of the transaction or so as to deny [Colorado Tax] the expected benefit of the contract."  *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 914 (8th Cir. 2007).  "Examples of bad faith resulting in breaches of the covenant include willfully rendering imperfect performance, abusing power in the specification of terms, or wrongfully interfering with or failing to cooperate with the other party's performance."  *Reliance Bank v. Paramont Props., LLC*, 425 S.W.3d 202, 207 (Mo. Ct. App. 2014).  "The party alleging a breach of a[n implied] covenant bears the burden of providing substantial evidence of bad faith."  *Id.*

Colorado Tax suggests that retaliatory motive is sufficient to establish bad faith for purposes of establishing a breach of the implied covenant.[15]  However, Colorado Tax has not provided any caselaw and the Court's independent research has not uncovered any that finds retaliatory motive to be sufficient evidence of bad faith for a breach of implied covenant where the party otherwise did exactly what the contract allowed it to do.  H&R Block did nothing to "willfully render[] imperfect performance"; this case does not involve the "specification of terms"; and H&R Block did not interfere with Colorado Tax's performance.  To the contrary, Colorado Tax failed to perform based on its own conduct without H&R Block interfering.  *Reliance Bank*, 425 S.W.3d at 207.  And based on Colorado Tax's failure to perform, H&R Block exercised its contractual right to terminate the FLAs without an opportunity to cure.  *See CitiMortgage, Inc.*, 808 F.3d at 752 (finding CitiMortgage "did not act in bad faith by asserting or enforcing its legal and contractual rights.") (quoting *Residential Funding Co., LLC v. Terrace Mortg. Co.*, 725 F.3d 910, 918 (8th Cir. 2013)).

---

[15] Colorado Tax provides as evidence of retaliation that Ms. Theil was publicly critical of H&R Block's software issues; that H&R Block took away Colorado Tax's franchise consultant and/or franchise support manager; and that Colorado Tax's FLAs were terminated because of Ms. Theil's complaints.  H&R Block controverts the foregoing facts.

11

The Court finds *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, particularly persuasive. In *CitiMortgage*, the terms of the parties' agreement permitted CitiMortgage in its "sole and exclusive discretion" to determine whether any loans sold to CitiMortgage by Defendant Bancorp were defective under the terms of the agreement, and that Bancorp would be required to cure or repurchase any such loans. 808 F.3d at 749-50. CitiMortgage determined eleven loans sold to it by Bancorp violated the terms of the agreement, notified Bancorp and demanded cure or repurchase of the defective loans, and then CitiMortgage sued for breach of contract when Bancorp refused. In its defense, Bancorp asserted that CitiMortgage acted in bad faith in exercising its discretion to determine whether the loans were defective. The Eighth Circuit concluded that CitiMortgage "did exactly what the contract allowed it to do," and that "[t]o inquire further by reviewing the validity of [CitiMortgage's defectiveness] determination [would] contradict unambiguous contract language." *Id.* at 752.

As in *CitiMortgage*, and as set out above, H&R Block did precisely what the FLAs permitted it to do—terminate without opportunity to cure due to Colorado Tax's violations of the disclosure provisions of Section 12. Colorado Tax, like Bancorp, "willingly agreed to place itself in this situation" by granting H&R Block discretion to terminate the FLAs without opportunity to cure for violations of Section 12. *Id.* at 753. Thus, H&R Block did not evade the spirit of the agreement or deny Colorado Tax an expected benefit, because it exercised its explicit contractual rights to which Colorado Tax willingly agreed. Therefore, H&R Block is entitled to summary judgment on Colorado Tax's breach of implied warranty of good faith and fair dealing claim because "[t]here can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract." *City of Joseph*, 251 S.W.3d at 371. H&R Block's motion for summary judgment is **GRANTED** as to Count 2.

## III. Unjust Enrichment (Count 4)

Finally, in Count 4 Colorado Tax alleges that H&R Block was unjustly enriched "when it wrongfully terminated Franchisee's FLAs and took over Franchisee's businesses." (Doc. 1 at 13, ¶ 79.) Under Missouri law, a plaintiff must establish three elements to prevail on a claim of unjust enrichment: "(1) [Plaintiff] directly 'conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances.'" *Allied Servs., LLC v. Smash My Trash, LLC*, 153 F.4th 600, 612

(8th Cir. 2025) (quoting *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010)).  However, as H&R Block argues, "when express contracts dictate the relationship, unjust enrichment cannot apply."  *Id.* (citing *Howard*, 316 S.W.3d at 436); *see also Charter Commc'ns Operating, LLC v. SATMAP, Inc.*, 569 S.W.3d 493, 512 (Mo. Ct. App. 2018) ("Because express contract terms govern the issue in dispute, the terms of the contracts apply and unjust enrichment is not applicable as a matter of law."); *Steelhead Townhomes, LLC v. Clearwater 2008 Note Program, LLC*, 537 S.W.3d 855, 860 (Mo. Ct. App. 2017); *O'Shaghnessy v. Cypress Media, LLC*, 208 F. Supp. 3d 1064, 1073 (W.D. Mo. 2016).

Here, express contracts (the FLAs) dictate the relationship between Colorado Tax and H&R Block. The FLAs govern the parties' obligations in the relationship and establish the circumstances under which the parties may terminate the agreement in Sections 13-15.  Thus, Colorado Tax's unjust enrichment claim fails because the FLAs govern the dispute.  *See Allied Servs., LLC*, 153 F.4th at 612 (finding unjust enrichment claim failed because "express contracts governed the dispute" and the contract permitted the party to sue for breach of contract for the complained-of conduct); *id.* ("An implied contract remedy is inappropriate where a contractual remedy is available.").  Colorado Tax does not contest the FLAs' applicability to the issue at hand,[16] and the Court concludes that Colorado Tax's unjust enrichment claim fails as a matter of law because the express FLAs govern the subject-matter of the claim.  *See Sifuentes v. Oyo Fitness LLC*, No. 4:22-cv-00330-HFS, 2025 WL 2905881, at *4 (W.D. Mo. May 19, 2025) (granting motion to dismiss unjust enrichment claim where the parties had entered an express contract governing the matter).  H&R Block's motion for summary judgment is therefore **GRANTED** as to Count 4.

---

[16] Colorado Tax argues that it meets the three required elements for unjust enrichment but largely ignores H&R Block's argument that the unjust enrichment claim fails as a matter of law because an express contract governs the parties' relationship.

**Conclusion**

Accordingly, after careful consideration and for the reasons explained above, the Court **ORDERS** that Defendant's motion for summary judgment, (Doc. 60), is **GRANTED**.[17]

 **IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: April 10, 2026

---

[17] H&R Block only moved for summary judgment on Colorado Tax's claims in the complaint. Thus, H&R Block's counterclaims and third-party claims remain pending in this case. (*See* Doc. 12.)